No. 25-1413

# United States Court of Appeals for the Fourth Circuit

TRUDY B. GRANT, SARAH KRAWCHECK, NASHONDA HUNTER, MAX MILLIKEN, AND CALEB CLARK

*Plaintiffs-Appellants,*

and

JORDAN MAPP,

*Plaintiff,*

v.

CONWAY BELANGIA, as the Executive Director of the South Carolina Election Commission; JOANNE DAY, as a Member of the South Carolina Election Commission; CLIFFORD J. EDLER, as a Member of the South Carolina Election Commission; ANGELA STRINGER, as a Member of the South Carolina Election Commission; SCOTT MOSELEY, as a Member of the South Carolina Election Commission; CHARLESTON COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION; ROBERT BOLCHOZ, Chairman of the South Carolina State Election Commission,

*Defendants-Appellees.*

---

Appeal from the United States District Court
For the District of South Carolina
At Charleston

---

**Petition for Rehearing and Rehearing En Banc of Defendants-Appellees**

---

Mary Elizabeth Crum
Tracey C. Green
Michael R. Burchstead
**BURR & FORMAN LLP**
PO Box 11390
Columbia, SC 29211
(803) 799-9800

Thomas W. Nicholson
**STATE ELECTION COMMISSION**
1122 Lady Street,
Suite 500
Columbia, SC 29201
(803) 734-9063

*Counsel for the State Election Commission and its Named Members*

John E. Robinson
**THE LAW OFFICES OF JOHN E. ROBINSON**
36 Broad Street
Charleston, SC 29401
(843) 723-5152

*Counsel for Charleston County Board of Elections and Voter Registration*

## Table of Contents

## Contents


Table of Authorities ........ ii

Statement of Purpose ........ 1

Argument ........ 3

1. In holding Appellants adequately alleged a redressable injury in fact, the panel misapplied the requested relief. ........ 3
   - A. By deeming Appellants' alleged injury redressable and remanding for a remedy of the district court's choosing, the panel's ruling conflicts with precedent and exceeds the relief requested. ........ 3
   - B. In holding Appellants suffered an injury in fact, the panel's decision conflicts with precedent and the complaint. ........ 4
2. In concluding § 7-15-320(B)(2) offends the Twenty-Sixth Amendment, the panel misapprehended and overlooked Supreme Court precedent. ........ 6
   - A. The panel's conception of the baseline right to vote conflicts with ratification-era Supreme Court precedent. ........ 8
   - B. The panel misapplied *Bossier Parish* to reject the ratification-era meaning of the right to vote in favor of an expansive one that contradicts Supreme Court precedent. ... 11
   - C. The panel's expansive conception of the abridgment of the right to vote and rejection of the right's ratification-era meaning rest on a premise that conflicts with Supreme Court precedent. ........ 14
   - D. Even if the panel properly referenced Fifteenth Amendment jurisprudence, it misapplied and misread those cases. ........ 19

Conclusion ........ 20

## Table of Authorities

**Page(s)**

**Cases**

*Austin v. Owens-Brockway Glass Container, Inc.*,
78 F.3d 875 (4th Cir. 1996) ........ 16

*Burdick v. Takushi*,
504 U.S. 428 (1992) ........ 3

*Carney v. Adams*,
592 U.S. 53 (2020) ........ 5

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........ 8

*Gill v. Whitford*,
585 U.S. 48 (2018) ........ 6

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174 (1988) ........ 10

*Grant v. Belangia*,
No. 25-1413 (4th Cir. Aug. 18, 2026) ........ *passim*

*Harman v. Forssenius*,
380 U.S. 528 (1965) ........ 15, 16, 17, 18

*Harper v. Va. State Bd. of Elections*,
383 U.S. 663 (1966) ........ 9, 17

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
78 F.4th 622 (4th Cir. 2023) ........ 4

*Kimel v. Fla. Bd. of Regents*,
528 U.S. 62 (2000) ........ 19

*Lane v. Wilson*,
307 U.S. 268 (1939) ........ 18

*Lee v. Va. State Bd. of Elections*,
843 F.3d 592 (4th Cir. 2016) .......... 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 1

*McDonald v. Bd. of Election of Comm'rs of Chicago*,
394 U.S. 802 (1969) .......... 8, 9, 10, 20

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jack., Fla.*,
508 U.S. 656 (1993) .......... 4, 5

*Oregon v. Mitchell*,
400 U.S. 112 (1970) .......... 16

*Reno v. Bossier Parish School Board*,
528 U.S. 320 (2000) .......... 7, 11, 12, 13

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
589 U.S. 423 (2020) .......... 4

*Reynolds v. Sims*,
377 U.S. 533 (1964) .......... 9

*Rice v. Cayetano*,
528 U.S. 495 (2000) .......... 19

*Richmond Med. Ctr. for Women v. Herring*,
570 F.3d 165 (4th Cir. 2009) .......... 14

*Sheppheard v. Morrisey*,
143 F.4th 232 (4th Cir. 2025) .......... 3

*Storer v. Brown*,
415 U.S. 724 (1974) .......... 3

*Tex. Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) .......... 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Tully v. Okeson*,
78 F.4th 377 (7th Cir. 2023) ............................................. 2, 11, 13, 20

*United States v. Classic*,
313 U.S. 299 (1941) ................................................................. 9

*United States v. Simms*,
914 F.3d 229 (4th Cir. 2019) ...................................................... 3

*Wells v. Johnson*,
150 F.4th 289 (4th Cir. 2025) ..................................................... 4

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886) ................................................................. 9

**Constitutional Provisions**

U.S. Const. amend. XIV ............................................................ 10

U.S. Const. amend. XIV, § 1 ............................................... 9, 10, 17

U.S. Const. amend. XV ....................................................... *passim*

U.S. Const. amend. XXVI .................................................... *passim*

U.S. Const. amend. XXVI, § 1 ............................................... 1, 12

U.S. Const. amend. XXVI, § 2 ................................................... 19

U.S. Const. art. I, § 4 ................................................................ 3

U.S. Const. art. III, § 2, cl. 1 .................................................. 1, 5

**Statutes**

S.C. Code Ann. § 7-15-320(B)(2) ........................................ *passim*

**Legislative Materials**

H.R. Rep. No. 92-37 ................................................................ 16

S. Rep. No. 92-26 ................................................................... 16

## Statement of Purpose

Appellees seek rehearing and rehearing en banc of the panel's published opinion holding that (1) Appellants have Article III standing and (2) S.C. Code Ann. § 7-15-320(B)(2) violates the Twenty-Sixth Amendment. *See Grant v. Belangia*, No. 25-1413 (4th Cir. Aug. 18, 2026). The panel's decision warrants rehearing and rehearing en banc.

First, the Constitution confines federal judicial power to cases or controversies, which includes the requirement of standing. U.S. Const. art. III, § 2, cl. 1. Appellants did not allege or establish they have suffered a redressable injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The holding that they did conflicts with controlling precedent and is based on relief not sought in the complaint.

Second, the Twenty-Sixth Amendment provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend. XXVI, § 1. Section 7-15-320(B)(2), allowing persons aged 65 or older to vote absentee without excuse, does nothing to abridge Appellants' right to vote under the Twenty-Sixth Amendment. In holding that § 7-15-320(B)(2) abridges Appellants' right

to vote under the Twenty-Sixth Amendment, the panel misapprehended, misapplied, and overlooked points of law, contravening Supreme Court precedent.

Furthermore, rehearing and rehearing en banc are warranted because this case presents questions of exceptional importance. Because there has been little litigation about the Twenty-Sixth Amendment, the panel worked on a largely "constitutional blank slate." *See Tully v. Okeson*, 78 F.4th 377, 382 (7th Cir. 2023) (citing *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 183 (5th Cir. 2020) (noting that the Twenty-Sixth Amendment "has yet to be interpreted in any significant depth")). But the panel rejected the holdings of the Fifth and Seventh Circuits, about similar laws, instead charting a separate path based on an erroneous application of precedent.

Specifically, *Texas Democratic Party* applies a retrogression test, while *Tully* asks whether the restriction materially burdens the core right to vote and upholds unequal access to no-excuse absentee voting where effective alternatives remained. But both refused to strike down a similar absentee voting statute. The panel rejected both approaches and instead treated unequal access to a state-created voting method, as an

abridgment. *Grant*, slip op. at 25–28. That disagreement on an undeveloped constitutional question also supports en banc review.

In sum, the panel contravened precedent and erroneously elevated the manner of voting into a constitutional mandate, thereby impairing the states' authority to regulate voting methods. *See* U.S. Const. art. I, § 4; *Burdick v. Takushi*, 504 U.S. 428 (1992); *Storer v. Brown*, 415 U.S. 724, 730 (1974). This was error and rehearing and rehearing en banc are appropriate and necessary.

## Argument

### 1. In holding Appellants adequately alleged a redressable injury in fact, the panel misapplied the requested relief.

### A. *By deeming Appellants' alleged injury redressable and remanding for a remedy of the district court's choosing, the panel's ruling conflicts with precedent and exceeds the relief requested.*

Because the district court cannot grant either remedy suggested on remand, the claim is not redressable. *See Sheppheard v. Morrisey*, 143 F.4th 232, 243 (4th Cir. 2025).

First, the court cannot "extend[] the benefit of 'no excuse' absentee-by-mail voting to voters under age sixty-five," *Grant*, slip op. at 29, because this would require rewriting the statute. *United States v. Simms*, 914 F.3d 229, 251 (4th Cir. 2019) ("[J]udges cannot revise invalid

statutes. To the contrary, while the grave remedy of striking down a statute as unconstitutional lies within the judicial province, rewriting it is a task solely for the elected legislature.”).

Second, the court cannot “remov[e] the benefit provided to voters age sixty-five and older” because Appellants never asked for that; they only asked to vote absentee without excuse. *See* JA24 ¶ 22(a) (requesting that the court “grant[] all voters under the age 65 the same right to vote by mail ballot afforded to voters over age 65.”). The court cannot “afford[] relief that the plaintiffs themselves did not ask for . . . .” *Republican Nat’l Comm. v. Democratic Nat’l Comm.*, 589 U.S. 423, 424 (2020). And removing benefits from other voters does not provide redress for Appellants because it will not tangibly help them obtain the relief they seek. *See Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025).

### B. ***In holding Appellants suffered an injury in fact, the panel’s decision conflicts with precedent and the complaint.***

The panel also unduly relies on the “able and ready” principle to find an injury in fact. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jack., Fla.*, 508 U.S. 656 (1993). Initially, its application to a Twenty-Sixth Amendment challenge is doubtful as *AGC* involved an injury in fact in an equal protection case. *John & Jane Parents 1 v.*

*Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 635 n.6 (4th Cir. 2023) (stating "the Supreme Court has repeatedly established and acknowledged different standing requirements for different alleged constitutional violations").

But even if applicable, Appellants must show they are "able and ready to [vote by no-excuse absentee] and [the statute] prevents them from doing so on an equal basis." *AGC*, 508 U.S. at 666. To the panel, however, the relevant test is Appellants' ability and readiness to vote *generally* because they assert no right to vote by mail but one free of an "age-based abridgement." *Grant*, slip op. at 9 n.3. That characterization does not comport with the complaint. *Cf.* JA24 ¶ 6(b) ("Each Plaintiff wishes to vote by absentee ballot in any election where that is particularly convenient . . . ."); JA24 ¶ 22(a) (asking that the Court "grant[] all voters under age 65 the same right to vote by mail ballot afforded to voters over age 65"). What Appellants seek is not equal treatment, but access to no-excuse absentee voting.

Moreover, the panel never engages with the actual elements of an Article III injury, standards that apply regardless of the "able and ready" principle. *Carney v. Adams*, 592 U.S. 53, 66 (2020). And Appellants have

not suffered a concrete harm because they have not established any concrete intention to vote no-excuse absentee if they could. *See Gill v. Whitford*, 585 U.S. 48, 65–66 (2018). Rather, they abstractly complain about being unable to "vote by absentee ballot in any election *where that is particularly convenient* . . . ." JA24 ¶ 6(b) (emphasis added). Their quest for voting convenience is at best an intangible harm that is not concrete. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

**2. In concluding § 7-15-320(B)(2) offends the Twenty-Sixth Amendment, the panel misapprehended and overlooked Supreme Court precedent.**

The panel begins with the obvious: "[i]n drafting the Twenty-Sixth Amendment, Congress adopted the same operative text used in the Fifteenth, Nineteenth, and Twenty-Fourth Amendments: 'the right . . . to vote . . . shall not be denied or abridged . . . on account of' a prohibited ground." *Grant*, slip op. at 13. Based on an erroneous reference to and application of Fifteenth Amendment jurisprudence, the panel concluded that allowing persons 65 and older to vote absentee "denied or abridged" the voting rights of persons under 65.

This was error from the outset. Ratification-era precedent explains that the constitutional baseline for voting is, as the district court

recognized, the right to cast a ballot and to have that ballot counted. In holding otherwise, the panel expanded the reach of *Reno v. Bossier Parish School Board*, 528 U.S. 320 (2000), to reject the ratification-era meaning of the right to vote in favor of an expansive one.

Compounding that error, the panel concluded the voting-rights amendments "create an anti-discrimination framework for assessing abridgment," *Grant*, slip op. at 19, and that the "right to vote" in those amendments encompasses all voting rules a particular state employs. *Id.* at 18 ("[T]he amendments reference the right to vote as it exists under state law."). In other words, according to the panel, "the right to vote [across all suffrage amendments is] what a state has defined it to be, but administered without discrimination based on a protected characteristic." *Id.*

Moreover, in concluding the voting-rights amendments' shared language extends an identical scope, warranting the incorporation of the Fifteenth Amendment jurisprudence, the panel contravened Supreme Court precedent showing that the "denied or abridged" formula does not necessarily reach equally across all those amendments. The panel's faulty premise—that same language means same scope—leads to an

incorrect, expansive reading of abridgment and the right to vote under the Twenty-Sixth Amendment, in disregard of the ratification-era understanding and Court precedent. And even if the panel properly referenced Fifteenth Amendment jurisprudence, it expanded those holdings beyond their original context.

### A. *The panel's conception of the baseline right to vote conflicts with ratification-era Supreme Court precedent.*

As the panel explains, deciding whether a voting practice abridges the right to vote "necessarily entails a comparison" to "some baseline." *Grant*, slip op. at 16 (citing *Bossier Parish*, 528 U.S. at 334). But that baseline is the right to cast a ballot and to have that ballot counted, as demonstrated by ratification-era Supreme Court precedent defining the right to vote. *See District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008) ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.").

Not long before the Twenty-Sixth Amendment's ratification, the Court explained that the right to vote does not encompass how a ballot is cast. *See McDonald v. Bd. of Election of Comm'rs of Chicago*, 394 U.S. 802, 807 (1969). Indeed, the Court explicitly rejected the notion that the right encompasses absentee voting, instead conceiving of the right as the

*effective* exercise of the franchise. *Cf. id.* ("It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots."). The inquiry was—and is—whether the challenged state law had an impact on a plaintiff's "ability to exercise the fundamental right to vote." *Id.*

That is the baseline the Court applied in its Equal Protection Clause holdings, by 1971, declaring that the Clause protects the fundamental right to vote. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections."); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (referring to "the political franchise of voting" as a "fundamental political right, because preservative of all rights")). But that right is to cast a ballot and to have that ballot counted. *Reynolds*, 377 U.S. at 554 ("It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote and to have their votes counted." (citations omitted)); *United States v. Classic*, 313 U.S. 299, 315 (1941) ("Obviously included within

the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted . . . .").

The panel thus erred in extending the baseline right to vote protected by the Twenty-Sixth Amendment to include voting by absentee ballot. *See McDonald*, 394 U.S. at 807 ("It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots."); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) (holding that federal courts "presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts"). As such, Appellants' quest for the privilege to vote no-excuse absentee does not violate the Twenty-Sixth Amendment, leaving only whether § 7-15-320(B)(2) violates the Equal Protection Clause—which the panel correctly held it did not.[1]

---

[1] As such, the panel's decision effectively makes the Twenty-Sixth Amendment an amplified Equal Protection Clause to reach state statutes governing the manner of voting with which the Fourteenth Amendment does not concern itself.

### B. *The panel misapplied* Bossier Parish *to reject the ratification-era meaning of the right to vote in favor of an expansive one that contradicts Supreme Court precedent.*

Notwithstanding this precedent, when confronted with two conceptions of "what the right to vote ought to be," *Bossier Parish*, 528 U.S. at 344, the panel rejected the "Platonic-form" reading, encompassing "the right to register, the right to cast a ballot, and the right to have that ballot counted." *Tully*, 78 F.4th at 384. Instead, the panel expanded the constitutional right to include whatever each state chooses to make it. *See Grant*, slip op. at 18, 20 (holding the right to vote is "what a state has defined it to be . . . " and "[s]tate governments retain the primary authority to determine the contours of the right to vote . . ."). Beyond rejecting ratification-era precedent, that expansion elevates all manner-of-voting regulation to constitutional significance while allowing the constitutional baseline to vary among the states based on each state's policy preferences.

*Bossier Parish* required none of that. As a § 5 preclearance case addressing whether the Voting Rights Act prohibited a redistricting plan enacted with a discriminatory but non-retrogressive purpose, that decision does not establish that every voting method must be equally

available to every protected class. *Bossier Parish*, 528 U.S. at 328, 341. The Court explained that "abridgment" necessarily requires a comparison. *Id.* at 334. Under § 5, which "uniquely deal[s] only and specifically with changes in voting procedures," the relevant comparator is "the status quo that is proposed to be changed." *Id.* Because § 2 and Fifteenth Amendment proceedings may challenge the status quo itself, the comparison in those proceedings instead is to "what the right to vote ought to be." *Id.* The latter context, therefore, addresses "discrimination more generally," rather than retrogression alone. *Id.* at 333–34.

Moreover, *Bossier Parish* itself counsels against deriving an equal-access-to-every-method rule from that discussion, instead stressing context: substantially identical "abridgment" language may employ different comparators because the provisions in which it appears operate differently. *Id.* at 334. Here, the Twenty-Sixth Amendment prohibits denying or abridging "the right . . . to vote" on account of age. U.S. Const. amend. XXVI, § 1. It does not expressly prohibit every age-based distinction involving the manner of voting.

The proper limiting principle is therefore material impairment of the effective franchise: an age-based rule abridges the right to vote when

it materially burdens a citizen's ability to register, cast an effective ballot, or have that ballot counted. *See Tully*, 78 F.4th at 384, 386–88. That rule recognizes *Bossier Parish*'s holding that constitutional abridgment is not confined to retrogression without transforming its reference to "discrimination more generally" into a right of identical access to every voting procedure. 528 U.S. at 333–34. The panel erroneously supplied the broader rule itself and, from there, incorrectly expanded the protected right.

Finally, based on Appellants' facial challenge, the panel held that § 7-15-320(B)(2) violates the Twenty-Sixth Amendment as a matter of law. But the panel's analysis does not answer the predicate question of whether the age-based distinction denies or abridges "the right . . . to vote." Instead, the panel attempted to reinforce its conclusion through asserted de facto burdens—employer delay, changing schedules, childcare disruptions, family emergencies, vehicle problems, weather, and illness. Yet it identified no evidence that those contingencies generally prevent younger voters from registering, casting an effective ballot, or having their ballots counted, rather than merely making

absentee voting more convenient in particular circumstances.[2] Those contingencies—which arise independently of the challenged age classification—do not transform unequal access to an optional voting method into a facial abridgment of the right to vote as a matter of law.

### C. *The panel's expansive conception of the abridgment of the right to vote and rejection of the right's ratification-era meaning rest on a premise that conflicts with Supreme Court precedent.*

Furthermore, the panel's adoption of an expansive conception of abridgment of the right to vote is based on a flawed premise: that the shared "the right . . . to vote . . . shall not be denied or abridged" language necessarily carries the same scope across all the voting-rights amendments. Because of the parallel language, the panel chose the conception of abridging the right to vote it believed to be more consistent with the Fifteenth Amendment and, therefore, all the voting-rights amendments. And on that same basis, the panel rejected the ratification-era reading of the right to vote, reasoning that position "misunderstands the meaning of abridging 'the right to vote' in the voting rights

---

[2] Appellants did not bring an as-applied challenge. *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (stating an as-applied challenge is "based on a developed factual record and the application of a statute to a specific person" (en banc)).

amendments." *Grant*, slip op. at 18 (rejecting the ratification-era reading as "inconsistent with the Supreme Court's interpretation of the Fifteenth Amendment as an anti-discrimination rule"). However, "it is far from clear that the Twenty-Sixth Amendment should be read to create a cause of action that imports principles from Fifteenth-Amendment jurisprudence." *Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 607 (4th Cir. 2016). The panel erred in concluding otherwise.

Specifically, the premise that the shared language indicates similar scope conflicts with Supreme Court precedent. The panel concludes that "past Supreme Court cases have used precedent interpreting one voting rights amendment to interpret the scope of another voting rights amendment." *Grant*, slip op. at 15 (citing *Harman v. Forssenius*, 380 U.S. 528, 542 (1965) as relying on a Fifteenth Amendment case to interpret the Twenty-Fourth Amendment). But the *Harman* Court interpreted the Twenty-Fourth Amendment more narrowly than the Fifteenth Amendment. Thus, the mere presence of the parallel "denied or abridged"

language in the Twenty-Sixth Amendment does not require wholesale incorporation.[3]

The *Harman* Court held that the requirement to vote imposed upon a voter who refused to pay the poll tax constituted an abridgment of the right to vote "by reason of failure to pay" that tax. 380 U.S. at 542. In doing so, the Court explained that "[a]ny *material requirement* imposed upon the federal voter solely because of his refusal to waive the constitutional immunity subverts the effectiveness of the Twenty-fourth Amendment and must fall under its ban." *Id.* (emphasis added). The Court continued, explaining the Amendment "hits *onerous procedural requirements* which *effectively handicap* exercise of the franchise by those claiming the constitutional immunity." *Id.* at 541 (emphasis added). Said differently, abridgment under the Twenty-Fourth Amendment forbids

---

[3] And neither the committee reports nor the individual legislator statements support the panel's expansion of the baseline right to vote for purposes of the Twenty-Sixth Amendment. *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 882 (4th Cir. 1996) ("'Committee reports . . . are frail substitutes for bicameral vote upon the text of a law and its presentment to the President.'" (quoting *Thompson v. Thompson*, 484 U.S. 174, 188, 191–92 (1988) (Scalia, J., concurring))); *cf.* S. Rep. No. 92-26 at 5, 10–18; H.R. Rep. No. 92-37 at 2–8, 21–25 (indicating the purpose of the amendment was eliminating the problem of dual-age voting after *Oregon v. Mitchell*, 400 U.S. 112 (1970)).

any material impairment to a voter solely because they refuse to surrender their constitutional protection from paying a poll tax to cast a ballot.

Beyond its examination of the right to cast a ballot, *Harman* did not adopt—or incorporate from the Fifteenth Amendment—a sweeping, no-discrimination conception of abridgment.[4] Twenty-Fourth Amendment abridgment operates more narrowly, forbidding burdens imposed solely because a voter declines to satisfy a monetary precondition to the franchise. The panel, however, never considered the meaning of abridgment in the Twenty-Fourth Amendment as decided in *Harman*—or its implications for the Twenty-Sixth Amendment, ratified just years after—instead proceeding from the incorrect premise that the Court has interpreted abridgment in that context identically to the Fifteenth Amendment context.

---

[4] To be sure, the Twenty-Fourth Amendment does not speak to equal access in voting based on a classification—only the failure to pay a poll tax. Unequal access or classifications based on wealth or payment of a fee are rooted in the Equal Protection Clause. *See Harper*, 383 U.S. at 666 (concluding "that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard").

To justify wholesale incorporation, the panel overstates *Harman*'s reliance on *Lane v. Wilson*, 307 U.S. 268 (1939), given that the Court referenced the Fifteenth Amendment (*Lane*) only for the limited proposition that both it and the Twenty-Fourth Amendment "nullif[y] sophisticated as well as simple-minded modes' of impairing the right guaranteed." *Harman* relied on the Fifteenth Amendment only to underscore that both amendments prohibit both overt and subtle mechanisms that weaken the protected right. *See also Harman*, 380 U.S. at 540 ("'Constitutional rights would be of little value if they could be indirectly denied,' or 'manipulated out of existence.'" (citations omitted)). Section 7-15-320(B)(2) in no way does that.

In sum, given that the Twenty-Fourth Amendment shares language with the Fifteenth but is not treated as a similarly broad anti-discrimination amendment, the mere presence of that language in the Twenty-Sixth does not justify incorporating the Fifteenth Amendment's expansive understanding of abridgment or the right to vote.

**D. *Even if the panel properly referenced Fifteenth Amendment jurisprudence, it misapplied and misread those cases.***

The referenced Fifteenth Amendment cases address discriminatory preconditions or burdens on casting a ballot as part of the right to vote, not uneven but permissible regulations of the manner of exercising the franchise. Significantly, much of the broader notion of abridgment under the Fifteenth Amendment reflects the Voting Rights Act, Congress's chosen vehicle for enforcing the Fourteenth Amendment's guarantees. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000). And because Congress has not exercised its authority to enact legislation enforcing the Twenty-Sixth Amendment, U.S. Const. amend. XXVI, § 2, those Voting Rights Act decisions should not inform the analysis of Appellants' claims.

And assuming that jurisprudence applies here, while the statute's reference to age may dispense with proving discriminatory intent, it does not remove the requirement that the interest affected fall within the constitutional right to vote or that the right has been materially impaired—i.e., that the classification deny or abridge that right. *See Grant*, slip op. at 10 n.8. The panel's reliance on *Rice v. Cayetano*, 528 U.S. 495 (2000), therefore overlooks the key distinction: *Rice* restricted who could participate in an election, whereas § 7-15-320(B)(2) leaves

every qualified voter able to exercise the franchise while affording one group an additional method of doing so. The relevant question remains whether a classification materially impairs the right to register, cast a ballot, or have it counted—not merely whether the statute expressly mentions age. *See McDonald*, 394 U.S. at 807–08; *Tully*, 78 F.4th at 383–88.

## Conclusion

For the reasons set forth above, the Court should grant rehearing and rehearing en banc.

[*Signature Page Follows*]

Respectfully submitted,


_s/Tracey C. Green_
Mary Elizabeth Crum
Tracey C. Green
Michael R. Burchstead
BURR & FORMAN LLP
PO Box 11390
Columbia, SC 29211
(803) 799-9800
lcrum@burr.com
tgreen@burr.com
mburchstead@burr.com

Thomas W. Nicholson
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
tnicholson@elections.sc.gov

*Counsel for the State Election Commission and its Named Members*

September 1, 2026

_s/John E. Robinson_
John E. Robinson
THE LAW OFFICES OF JOHN E. ROBINSON
36 Broad Street
Charleston, SC 29401
(843) 723-5152
john@charlestonlawoffices.com

*Counsel for Charleston County Board of Voter Registration and Elections*


September 1, 2026

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 25-1413 **Caption:** Trudy B. Grant v. Conway Belangia

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 3857 [*state number of*] words

☐ this brief uses monospaced type and contains ____________ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in 14-pt Century Schoolbook [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using ____________ [*identify word processing program*] in ____________ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Tracey C. Green

Party Name Defendants-Appellees Date: September 1, 2026