No. 25-1413

# In the United States Court of Appeals for the Fourth Circuit

TRUDY B. GRANT, et al.,

*Plaintiffs-Appellants*,

v.

CONWAY BELANGIA, et al.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the District of South Carolina, No. 2:23-cv-06838-BHH

---

**Brief of Missouri and Sixteen other States as Amici Curiae in Support of Defendants-Appellees Seeking Rehearing en banc**

---


**CATHERINE L. HANAWAY**
Attorney General of Missouri

LOUIS J. CAPOZZI III
*Solicitor General*
J. PATRICK SULLIVAN
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Telephone: (573) 645-9662
E-mail: Louis.Capozzi@ago.mo.gov
Counsel for Amicus Curiae

## TABLE OF CONTENTS

**Table of Authorities** ........ iii

INTEREST OF AMICUS CURIAE, INTRODUCTION, AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 4

**I. As the U.S. Supreme Court held, refusing to indulge a preference for absentee voting does not abridge the right to vote.** ........ 4

**II. *Bossier Parish* does not require voters of all ages to be treated the same because age is not a suspect class.** ........ 8

**III. Historical practice confirms the implausibility of the panel's holding.** ........ 11

**Conclusion** ........ 13

**Certificate of Compliance** ........ 15

**Certificate of Service** ........ 16

## Table of Authorities

### Cases

*Alexander v. S.C. State Conf. of the NAACP*,
602 U.S. 1 (2024) .... 2

*Bullock v. Carter*,
405 U.S. 134 (1972) .... 5

*Burdick v. Takushi*,
504 U.S. 428 (1992) .... 4

*Carrington v. Rash*,
380 U.S. 89 (1965) .... 1

*Cleburne v. Cleburne Living Center*,
473 U.S. 432 (1985) .... 10

*Crawford v. Marion County Elec. Bd.*,
553 U.S. 181 (2008) .... 3, 11

*Daunt v. Benson*,
999 F.3d 299 (6th Cir. 2021) .... 3

*Goosby v. Osser*,
409 U.S. 512 (1973) .... 5

*Grant v. Belangia*,
No. 25-1413, 2026 WL 2409681 (4th Cir. Aug. 18, 2026) .... 2, 6, 9, 10

*Harper v. Virginia State Board of Elections*,
383 U.S. 663 (1966) .... 7

*Hill v. Stone*,
421 U.S. 289 (1975) .... 5

*Houston Comm. College Sch. Sys. v. Wilson*,
595 U.S. 468 (2022) .... 13

*Kimel v. Fla. Bd. of Regents*,
528 U.S. 62 (2000) .... 10

*Kramer v. Union Free Sch. Dist. No. 15*,
395 U.S. 621 (1969) .......... 5

*Mass. Bd. of Retirement v. Murgia*,
427 U.S. 307 (1976) .......... 10

*McDonald v. Bd. of Elec. Commrs. of Chicago*,
394 U.S. 802 (1969) .......... passim

*O'Brien v. Skinner*,
414 U.S. 524 (1974) .......... 5

*Reno v. Bossier Parish School Bd.*,
528 U.S. 320 (2000) .......... 9

*Rucho v. Common Cause*,
588 U.S. 684 (2019) .......... 2

*Tex. Democratic Party v. Abb*ott,
("TDP"), 978 F.3d 168 (5th Cir. 2020) .......... 6, 7, 8, 12

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) .......... 1

*Tully v. Okeson*,
977 F.3d 608 (7th Cir. 2020) .......... passim

**Constitutional Provisions**

U.S. Const. amend. XIV .......... 1

U.S. Const. amend. XXVI .......... 3

U.S. Const. art. I, § 4, cl. 1 .......... 1

**Statutes**

52 U.S.C. § 20101 .......... 12

Ala. Code § 17-9-13(c)–(e) .......... 12

Fla. Stat. § 97.0535(4)(a) .......... 12

Ga. Code § 21-2-409.1 .......... 12

R.I. Stat. § 17-19-51 .......... 12

## INTEREST OF AMICUS CURIAE, INTRODUCTION, AND SUMMARY OF ARGUMENT[1]

The Constitution vests state legislatures with the primary authority to set the rules for elections. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2; *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Carrington v. Rash*, 380 U.S. 89, 91 (1965). This authority comes with the responsibility of making difficult policy choices in a politically-sensitive area. To exercise this constitutional prerogative, States must balance between sometimes-competing considerations, such as encouraging voter participation and ensuring election integrity. *See Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020).

Amici States Missouri have a strong interest in maintaining their constitutional prerogatives to set election rules. That interest is jeopardized when judges insert their own policy preferences into elections and displace rules enacted by the people's elected representatives. Of course, courts must enforce constitutional and statutory commands—such as prohibitions against racially discriminatory rules. *See* U.S. Const. amend. XIV; *id.* amend. XV. But if judges strike down state

---

[1] This Brief is filed under Federal Rule of Appellate Procedure 29(b)(2).

election laws without clear legal authority to do so, citizens will rightfully fear that the judiciary is interfering with their elections. *See Rucho v. Common Cause*, 588 U.S. 684, 704 (2019) ("With uncertain limits, intervening courts—even when proceeding with best intentions—would risk assuming political, not legal, responsibility for a process that often produces ill will and distrust." (internal quotation omitted)); *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 11 (2024) ("We must be wary of plaintiffs who seek to transform federal courts into weapons of political warfare that will deliver victories that eluded them in the political arena." (internal quotation omitted)).

The panel opinion failed to heed those principles in enjoining § 7-15-320 of the South Carolina election code, which gives South Carolina voters over age 65 a blanket right to vote by absentee ballot. In the panel's view, the Twenty-Sixth Amendment forbids measures designed to increase the convenience and ease of voting for elderly voters. *See Grant v. Belangia*, No. 25-1413, 2026 WL 2409681, at *8–*9 (4th Cir. Aug. 18, 2026). This holding is at odds with the Fifth and Seventh Circuits, contrary to Congress's and States' historical practices, and part of a troubling trend where, in the election-law context, some courts

discount the States' policy priorities and brush them aside in favor of other goals. *See Daunt v. Benson*, 999 F.3d 299, 331 (6th Cir. 2021) (Readler, J., concurring in the judgment) ("Regrettably, our cases license routine and unwarranted second-guesing of a state's democratic decisions, just the sort of things unelected federal judges are least well-equipped to do." (citing *Crawford v. Marion County Elec. Bd.*, 553 U.S. 181, 208 (2008) (Scalia, J., concurring in the judgment) ("[I]t is for state legislatures to weigh the costs and benefits of possible changes to their election codes")).

This approach is legally erroneous and should be rejected. The Twenty-Sixth Amendment provides that, for citizens over eighteen years of age, "[t]he right to vote . . . shall not be denied or abridged[.]" U.S. Const. amend. XXVI. Decades ago, the Supreme Court established that the right to vote does not include a right to receive an absentee ballot. *McDonald v. Bd. of Elec. Commrs. of Chicago*, 394 U.S. 802, 807 (1969). Under this precedent, the panel's decision is wrong and the district court should be affirmed. The right to vote means the right to cast a ballot, "not the right to do so in a voter's preferred manner, such as by [absentee ballot]." *Tully*, 977 F.3d at 613. Thus, South Carolina's law making it

easier for elderly voters to cast their votes does not implicate the Twenty-Sixth Amendment. This Court should avoid an unnecessary circuit split and grant the petition for rehearing en banc.

## ARGUMENT

### I. As the U.S. Supreme Court held, refusing to indulge a preference for absentee voting does not abridge the right to vote.

One critical question in this case is "what is 'the right to vote?'" *Tully*, 977 F.3d at 611. Around the time of the Twenty-Sixth Amendment's adoption, the term's core meaning was to "exercise a political franchise." *Webster's Third New International Dictionary* 2365 (1986). That original understanding did not include a "right to vote in any manner." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

Two years before the Twenty-Sixth Amendment's ratification, *McDonald*, 394 U.S. 802, confirmed that the right to vote "means the ability to cast a ballot"—not the right "to do so in a voter's preferred manner." *Tully*, 977 F.3d at 613. In *McDonald*, the Supreme Court rejected a claim by pretrial detainees that Illinois violated their "basic, fundamental right" to vote by not allowing them to vote absentee while allowing others—poll watchers, those away from the county, those

observing a religious holiday, and the physically incapacitated—to do so. 394 U.S. at 806–10. Critically, "there [wa]s nothing to show" detainees were "absolutely prohibited from exercising the franchise." *Id.* at 809; *see id.* at 807, 808 n.7. Thus, the Court explained, the challenged law did not implicate "the right to vote . . . but a claimed right to receive absentee ballots." *Id.* at 807.

Other cases decided shortly before and after the Twenty-Sixth Amendment's adoption "reiterate[]" *McDonald*'s understanding. *Tully*, 977 F.3d at 613 n.3. In *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 n.6 (1969); *Bullock v. Carter*, 405 U.S. 134, 143 (1972); *Goosby v. Osser*, 409 U.S. 512, 521–22 (1973); *O'Brien v. Skinner*, 414 U.S. 524, 529–30 (1974); and *Hill v. Stone*, 421 U.S. 289, 300 n.9 (1975), the Supreme Court again distinguished between statutes that make "casting a ballot easier for some who are unable to come to the polls" (like elderly voters in South Carolina) and statutes that result in "an absolute denial of the franchise." *Kramer*, 395 U.S. at 626 n.6. It made clear that "not every limitation or incidental burden" resulting from state election laws, *Bullock*, 405 U.S. at 143, "impact[s] . . . the[] right to vote[.]" *Hill*, 421 U.S. at 300 n.9. Those decisions furnish weighty, contemporaneous

evidence that the Twenty-Sixth Amendment secures the "ability to cast a ballot" only. *Tully*, 977 F.3d at 613.

That construction disposes of Appellants' challenge here. South Carolina's law makes "'voting more available'" to the elderly, allowing them to vote by absentee ballot. *Tully*, 977 F.3d at 614 (quoting *McDonald*, 394 U.S. at 807). But Appellants never aver that South Carolina law will "absolutely prohibit[ them] from voting." *Id.* (quoting *McDonald*, 394 U.S. at 807). "Consequently, 'at issue [in this case] [i]s not a claimed right to vote' but a 'claimed right to an absentee ballot,'" which means plaintiffs' Twenty-Sixth Amendment claim fails. *Id.* (quoting *McDonald*, 394 U.S. at 807) (second alteration in original).

The panel brushed aside *McDonald* because it preceded the Twenty-Sixth Amendment and observed that *McDonald* addressed a Fourteenth Amendment claim and involved a non-suspect classification. *Grant*, 2026 WL 2409681, at *10–*11. But those observations do not distinguish *McDonald* for stare decisis purposes, much less render it irrelevant for purposes of understanding what the right to vote meant to those who ratified the Twenty-Sixth Amendment. *See Tex. Democratic Party v. Abbott* ("*TDP*"), 978 F.3d 168, 185 (5th Cir. 2020). As the Fifth

Circuit observed in addressing this issue, the Supreme Court's understanding of a constitutional concept—the right to vote—in 1969 "certainly assist[s]" in the search for "[u]nderstanding what the right to vote meant at the time the Twenty-Sixth Amendment was ratified in 1971." *Id.*; *see also Tully*, 977 F.3d at 613. "A definitive meaning of the right to vote . . . could hardly have been given any closer to the time the Amendment was ratified." *TDP*, 978 F.3d at 185.

Further, the panel was incorrect that *McDonald* hinged on whether the challenged Illinois statute involved a non-suspect classification. *McDonald* rejected the detainees' constitutional challenge for two independent reasons—one of which was that "nothing in the record" demonstrated that "the Illinois statutory scheme has an impact on [their] ability to exercise the fundamental right to vote." 394 U.S. at 807. And the Supreme Court relied on that same rationale to reject a separate argument that Illinois's statutory scheme violated the detainees' right to vote on account of "indigency," even though *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966), had held the right to vote cannot be conditioned upon wealth. *McDonald*, 394 U.S. at 808 n.7. Thus, the Supreme Court made plain that a statute does not implicate the right to

vote where it merely impacts a preferred manner of voting. *Tully*, 977 F.3d at 613.

Notably, in *TDP*, the Fifth Circuit addressed a Twenty-Sixth Amendment challenge to a Texas statute that is similar to South Carolina's. That court explicitly rejected the argument that any time a new election law makes voting easier for one age group than others, an "abridgement" of the right to vote occurs. *TDP*, 978 F.3d at 188–89. The court found such an argument "implausible" and instead construed the Twenty Sixth Amendment as "a prohibition against adopting rules based on age that deny or abridge the rights voters already have." *Id.* at 189-91. The court ultimately held that:

> The right to vote under the Twenty-Sixty Amendment is not abridged unless the challenged law creates a barrier to voting that makes it more difficult for the challenger to exercise her right to vote relative to the *status quo* or unless the *status quo* itself is unconstitutional.

*Id.* at 192. This Court should grant the petition for rehearing en banc and follow the well-reasoned approach taken by the Fifth and Seventh Circuits.

### II. *Bossier Parish* does not require voters of all ages to be treated the same because age is not a suspect class.

Instead of following *McDonald*'s straightforward holding that the

right to vote does not contain a right to an absentee ballot, the panel largely based its decision on *Reno v. Bossier Parish School Bd.*, 528 U.S. 320 (2000), a vote dilution case under Section 5 of the 1965 Voting Rights Act. In that context, the Supreme Court addressed abridgement of the right to vote and explained that the appropriate baseline for comparison is "the status quo that is proposed to be changed." *Id.* at 334. The Supreme Court went on to point out that, if the status quo itself is alleged to be unconstitutional, the appropriate comparator for abridgement purposes is a hypothetical "what the right to vote ought to be." *Id.* The panel seized on this language and concluded that the right to vote under the Twenty-Sixth amendment is abridged when voting rules discriminate in any manner. *Grant*, 2026 WL 2409681, at *8. In other words, what the right to vote "ought to be" is whatever the most favorable conditions are for any age group, as determined by a court. Any time voting rules change for any age group, a new "baseline" emerges and thus the rules need to change for every other group too if a court determines the new rules are more favorable. Such an approach misapplies *Bossier Parish*, flouts separation of powers concerns, and is impractical in application.

Putting aside that *Bossier Parish*'s "what the right to vote ought to

be" approach applies only when, unlike here, the status quo is alleged to be unconstitutional, the panel also wrongly treated age as a suspect class, like race. *Grant*, 2026 WL 2409681, at *8. But the Supreme Court has repeatedly held that age is not a suspect class. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). "Age classifications, unlike governmental conduct based on race or gender, cannot be characterized as 'so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.'" *Id.* (quoting *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)). "Older persons, again, unlike those who suffer discrimination on the basis of race or gender, have not been subjected to a 'history of purposeful unequal treatment.'" *Id.* (quoting *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976)). "Old age also does not define a discrete and insular minority because all persons, if they live out their normal life spans, will experience it." *Id.* Oddly enough, the panel cited *Kimel* in rejecting the plaintiffs'/appellants' Equal Protection claim. The panel thus reached the untenable result that age is a suspect class but only under the Twenty-Sixth Amendment. This carve out has no support in precedent and ignores widespread measures, in place for

decades, designed to aid elderly voters in casting their ballots.

If anything, making voting easier for the elderly promotes compliance with the Twenty-Sixth Amendment. As officials know from "general experience in dealing with the problems of the aged," the "physical and social conditions that invariably afflict senior citizens" can "deter[]" them from "coming to the polls on a November day." *Tully*, 977 F.3d at 619 (Ripple, J., concurring). By allowing the elderly to vote by absentee ballot, South Carolina "simply employed a reasonable methodology to identify those who . . . needed a special accommodation to get to the polls. This is hardly an invidious classification based on age." *Id.*; *cf. Crawford*, 553 U.S. at 212 n.4 (Souter, J., dissenting) (deeming it "commendable" for Indiana "to make absentee voting available to the elderly"). Rather, this "solicitude" ensures that "everyone who experiences the barriers associated with old age can vote." *Tully*, 977 F.3d at 619 (Ripple, J., concurring).

### III. Historical practice confirms the implausibility of the panel's holding.

Historical practice confirms that not all age-related distinctions abridge the right to vote under the Twenty-Sixth Amendment. Since the Amendment's ratification, there has been a steady increase in

accommodations granted to the elderly. Three years before the Amendment's ratification, "only two states . . . provid[ed] a special privilege for older voters to cast absentee ballots; by 1973, there were four." *TDP*, 978 F.3d at 186–87. Some states allow older voters to move to the front of the line at polling places, *see* Ala. Code § 17-9-13(c)–(e), authorize special assistance for the elderly, *see* Ga. Code § 21-2-409.1, or provide priority voting booths for older voters. *See* R.I. Stat. § 17-19-51. Other states exempt voters over 65 from having to show identification to vote. *See, e.g.,* Fla. Stat. § 97.0535(4)(a). In all, at least thirteen states accommodate elderly voters.

Congress, meanwhile, requires states to assist older voters "to promote the fundamental right to vote by improving access for handicapped and elderly individuals." 52 U.S.C. § 20101. Federal law requires states to "assure that all polling places for Federal elections are accessible to handicapped and elderly voters," and if a voter is not assigned to an accessible polling place, states must provide the voter "with an alternative means for casting a ballot on the day of the election." *Id.* § 20102(a), (b)(2)(B)(ii). That both states and Congress have long made special accommodations for the elderly is strong evidence that the

Twenty-Sixth Amendment does not prohibit them. *See Houston Comm. College Sch. Sys. v. Wilson*, 595 U.S. 468, 475–76 (2022) (examining historical congressional practices to determine whether censure ran afoul of First Amendment). The panel's holding does not square with this country's established and *sensible* tradition of assisting older voters and wrongly treats age as a suspect classification.

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for rehearing en banc.

Respectfully submitted,

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*Louis J. Capozzi*
Louis J. Capozzi III
SOLICITOR GENERAL
815 Olive Street, Suite 200
St. Louis, MO 63101
Telephone: (573) 645-9662
E-Mail: Louis.Capozzi@ago.mo.gov

J. Patrick Sullivan
DEPUTY SOLICITOR GENERAL
615 E. 13th Street, Suite 400
Kansas City, MO 64106
Telephone: (573) 645-9662

E-Mail: Patrick.Sullivan@ago.mo.gov

*Counsel for Additional Amici States*

**Steve Marshall**
Attorney General
State of Alabama

**Tim Griffin**
Attorney General
State of Arkansas

**James Uthmeier**
Attorney General
State of Florida

**Raul R. Labrado**
Attorney General
State of Idaho

**Brenna Bird**
Attorney General
State of Iowa

**Kris W. Kobach**
Attorney General
State of Kansas

**Liz Murrill**
Attorney General
State of Louisiana

**Lynn Fitch**
Attorney General
State of Mississippi

**Michael T. Hilgers**
Attorney General
State of Nebraska

**Andy Wilson**
Attorney General
State of Ohio

**Alan Wilson**
Attorney General
State of South Carolina

**Marty J. Jackley**
Attorney General
State of South Dakota

**Jonathan Skrmetti**
Attorney General
State of Tennessee

**Ken Paxton**
Attorney General
State of Texas

**Derek Brown**
Attorney General
State of Utah

**John B. McCuskey**
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

Amicus State of Missouri, by and through its counsel, Louis J. Capozzi, hereby certifies that this document complies with the type/volume limit of Fed.R.App.P. 32(a)(7)(b). It contains 2,590 words and complies with the typeface and type style requirements of Fed.R.App.P. 29(b)(4) and 32(a)(5)/(a)(6). It has been printed in a proportionally-spaced typeface in 14-point Century Schoolbook font.

*Louis J. Capozzi* .

Louis J. Capozzi III
Solicitor General

## CERTIFICATE OF SERVICE

Amicus State of Missouri, by and through its counsel, Louis J. Capozzi, hereby certifies that the foregoing amici curiae brief was served on appellees' counsel via CM/ECF by electronic filing of the foregoing brief with the clerk of this court this 8th day of September, 2026.

*Louis J. Capozzi*

Louis J. Capozzi III
Solicitor General