**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

No. 25-1413

---

TRUDY B. GRANT, et al.,

Plaintiffs-Appellants

v.

CONWAY BELANGIA, as the Executive Director of the South Carolina Election Commission, et al.,

Defendants-Appellees.

---

## Motion for Stay of Mandate Pending Filing of Petition for Writ of Certiorari

---

All Defendants-Appellees respectfully move the Court to stay issuance of the mandate pending the filing of a petition for a writ of certiorari in the United States Supreme Court. *See* Fed. R. App. P. 41(d); Loc. R. 41. Defendants-Appellees intend to file a petition for writ of certiorari with the United States Supreme Court within 90 days of the denial of Defendants-Appellees' petition for rehearing and rehearing en banc on September 15, 2026. *See* Sup. Ct. R. 13(3). Defendants-Appellees request a stay of the mandate that does not exceed those 90 days, with a

continuance of the stay until the Supreme Court's final disposition.[1] *See* Fed. R. App. P. 41(d)(2)(B). Counsel for Plaintiffs-Appellants has advised that Plaintiffs-Appellants consent to staying the mandate. *See* Loc. R. 27(a).

**Argument**

The Court should grant Defendants-Appellees' motion to stay the mandate pending the filing of a petition for a writ of certiorari because the petition will "present a substantial question," "there is good cause for a stay," and the motion is "not frivolous or filed merely for delay." Fed. R. App. P. 41(d)(1); Loc. R. 41.

**1. Defendants-Appellees' petition for a writ of certiorari will present a substantial question.**

The question Defendants-Appellees will raise in their certiorari petition is substantial because it presents an issue of first impression for the Supreme Court concerning the meaning and scope of a constitutional amendment about which there is a disagreement among several federal courts of appeals.

---

1 Absent a stay, the mandate will issue on September 22, 2026—seven days after Court entered its order denying the petition for rehearing and rehearing en banc. *See* Fed. R. App. P. 41(b).

The Supreme Court has not yet interpreted the Twenty-Sixth Amendment or applied it to state voting laws in the 55 years since the amendment was adopted. That alone demonstrates the issue's significance. *Cf. Tex. Democratic Party v. Abbott*, 591 U.S. 1013, 1014 (2020) (Sotomayor, J., concurring) (recognizing that a case involving a similar state-law challenge raised "*weighty but seemingly novel* questions regarding the Twenty-Sixth Amendment" (emphasis added)).

Indeed, whether a court of appeals has decided an important question of federal law that the Supreme Court has not answered makes the question sufficiently significant to warrant consideration in determining whether certiorari is appropriate. *See* Sup. Ct. R. 10(c) (stating that, in reviewing a certiorari petition, the Court considers whether "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court"). That is so here because the Supreme Court has never resolved the question presented in this case.

Compounding the significance of the constitutional question, this Court's broad interpretation of the Twenty-Sixth Amendment directly conflicts with—and expressly rejects—rulings by the Fifth and Seventh

Circuits. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020); *Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020). Such a conflict concerning the meaning of a constitutional amendment justifies Supreme Court consideration and is therefore substantial. *See* Sup. Ct. R. 10(a) (stating that, in reviewing a certiorari petition, the Court considers whether "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter").

That circuit split is especially substantial and significant here. Five other states have voting laws like the one challenged here,[2] and states across the country provide other voting accommodations to voters on the basis of age.[3] The expansive language of this Court's opinion suggests

---

2 Tenn. Code Ann. § 2-6-201(5)(A) (providing no-excuse absentee voting to a "person sixty (60) years of age or older when the person requests to vote absentee"); Tex. Elec. Code § 82.003 ("A qualified voter is eligible for early voting by mail if the voter is 65 years of age or older on election day."); Ind. Code § 3-11-10-24 (providing no-excuse absentee voting to any "elderly voter"); La. Rev. Stat. Ann. § 18:1303(J) ("A person who has attained the age of sixty-five years or more may vote absentee by mail . . . ."); Miss. Code Ann. § 23-15-715(b) (allowing persons who are 65 years of age or older to vote absentee).

3 *See, e.g.*, Va. Code Ann. § 24.2-649.1 ("Any qualified voter who is a person with a disability or who is age 65 or older shall be entitled to

that all voting accommodations based on age are invalidated by the Twenty-Sixth Amendment. As such, ballot access for persons aged 65 or older—60 in at least one instance—has the potential to be very different in states within the Fourth Circuit versus access for similarly situated voters in other states. That difference provides a substantial and significant basis for a petition for writ of certiorari and, thus, merits a stay of the mandate in this case.

In all, a stay is appropriate because the novel issue of the Twenty-Sixth Amendment's meaning presents "a 'close' question [and] one that very well could be [*and has been*] decided the other way." *Cf. U.S. v.*

---

vote outside of the polling place in accordance with the provisions of this section."); N.C. Gen. Stat. § 163-166.9 (providing curbside voting for voters unable to enter the polling place because of age); Md. Code Ann., Election Law § 10-102 (providing alternative polling places for elderly voters if the assigned location is not structurally barrier free); Ala. Code § 17-9-13(c)–(e) (allowing older voters to move to the front of the line at polling places); Ga. Code § 21-2-409.1 (permitting voters age 75 years or older requiring to vote immediately at the next available voting booth without having to wait in line); R.I. Stat. § 17-19-51 (providing priority voting booths for older voters); Fla. Stat. § 97.0535(4)(a) (exempting voters over 65 from having to show identification to vote); W. Va. Code § 3-3-1 (allowing absentee voting for any voter confined to a specific location and cannot vote in person "because of physical disability or immobility due to extreme advanced age"); Ky. Rev. Stat. § 117.085(1)(h)(8) (allowing absentee voting if a voter is unable to go to the polls on "account of age").

*Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (explaining that a "substantial question" under 18 U.S.C. § 3143 is one that is "close" or "very well could be decided the other way," thereby justifying a convict's release pending appeal or a petition for a writ of certiorari (citation omitted)).

**2. There is good cause to stay the Court's mandate, and this motion is not frivolous or filed merely for delay.**

Initially, good cause exists to stay the mandate because any remedy the district court imposes absent a stay will alter the State's election laws and procedures, resulting in potential voter confusion and disruptive consequences amid the 2026 Statewide General Election. *Cf. Purcell v. Gonzalez*, 549 U.S. 1, 2 (2006) (per curiam) (stating "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that increases "[a]s an election draws closer").

While the district court, as instructed, would be mindful of that concern, the administration of the election will be well underway by the time the mandate is issued. The Election Commission has already sent

absentee ballots for voters in the military and overseas voters.[4] Further, if not stayed, the mandate will issue less than two weeks before all other absentee ballots will be mailed and less than a month before early voting begins.[5] A stay pending Defendants-Appellees' certiorari petition will ensure the rules remain constant and clear amid the election. *See Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."). And given the commands of *Purcell* and the proximity of the November general election, there is nothing for the district court to do at this stage.

---

4 Under both the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and the state counterpart, county and state election officials are required to send absentee ballots to covered voters requesting them by 45 days before any election. *See* 52 U.S.C. § 20302(a)(8); S.C. Code Ann. § 7-15-680. The 2026 Statewide General Election is on November 3, 2026. Therefore, the UOCAVA ballots were sent to covered voters on or before September 19, 2026.

5 South Carolina Election Commission, Absentee Voting, *SC Votes*, https://scvotes.gov/voters/absentee-voting/ (last visited Sept. 17, 2026); South Carolina Election Commission, Early Voting, *SC Votes*, https://scvotes.gov/voters/early-voting/ (last visited Sept. 17, 2026) (stating early voting commences on October 19, 2026).

Finally, this motion is not frivolous or filed merely for delay. Beyond identifying good cause warranting a stay, Defendants-Appellees have identified several well-founded reasons the question to be presented in their certiorari petition is substantial. Simply put, the question presents a matter of first impression for the Supreme Court concerning the meaning of a constitutional amendment, and several federal courts of appeals now disagree on the amendment's meaning and its application to state voting laws across the country. That backdrop sufficiently establishes good cause for this request.

## Conclusion

For the reasons stated above, this Court should stay the mandate in this case pending the filing of a petition for a writ of certiorari. Pursuant to Rule 41(d)(2)(B), the stay should be extended upon the filing of the petition, and it should remain in place until the Supreme Court's final disposition. As stated above, *see* Loc. R. 27(a), counsel for Plaintiffs-Appellants have consented to the granting of this motion to stay issuance of the mandate.

[*Signature Page Follows*]

Respectfully submitted,

*s/Tracey C. Green*
Mary Elizabeth Crum
Tracey C. Green
Michael R. Burchstead
BURR & FORMAN LLP
PO Box 11390
Columbia, SC 29211
(803) 799-9800
lcrum@burr.com
tgreen@burr.com
mburchstead@burr.com

Thomas W. Nicholson
STATE ELECTION COMMISSION
1122 Lady Street, Suite 500
Columbia, SC 29201
(803) 734-9063
tnicholson@elections.sc.gov

*Counsel for the State Election Commission and its Named Members*

September 21, 2026

*s/John E. Robinson*
John E. Robinson
THE LAW OFFICES OF JOHN E. ROBINSON
36 Broad Street
Charleston, SC 29401
(843) 723-5152
john@charlestonlawoffices.com

*Counsel for Charleston County Board of Voter Registration and Elections*

September 21, 2026

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 25-1413 **Caption:** Trudy B. Grant v. Conway Belangia

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 1,618 [*state number of*] words

☐ this brief uses monospaced type and contains ____________ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word [*identify word processing program*] in
14-pt Century Schoolbook [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
____________ [*identify word processing program*] in
____________ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Tracey C. Green

Party Name Defendants-Appellees Date: September 21, 2026